**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3357
_____

AI YUN CHEN,
                              Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                       Respondent


_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-355-711)
Immigration Judge: Miriam K. Mills

_____

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2010
Before: MCKEE, *Chief Judge*, HARDIMAN and COWEN, *Circuit Judges*

(Opinion filed: June 4, 2010)

_____

OPINION
_____

PER CURIAM

Petitioner Ai Yun Chen, a citizen of China, seeks review of a final order of

removal and the denial of her motion to remand.  Chen claims that she suffered past

persecution by government officials through their enforcement of China's coercive family planning policy. She fears future persecution if removed to China. Because the adverse credibility determination in this case is supported by substantial evidence, and because the Board of Immigration Appeals ("BIA") did not abuse its discretion when it denied Chen's motion to remand, we will deny Chen's petition for review.

I.

In April 2005, Chen entered the United States without being admitted or paroled after inspection by an immigration officer. Chen was served with a notice to appear, and she conceded removability. To block her removal, she applied for asylum, withholding of removal, and relief under the Convention Against Torture. At a hearing before an immigration judge ("IJ") in September 2007, Chen testified in support of her applications for relief.

Chen testified that she was born in 1985, and that she married her husband in 2004. Because she was not of legal age to marry, Chen was "not permitted to get [a] marriage certificate from the government."[1] In June 2004, she became pregnant. On December 8, 2004, birth control cadres came to Chen's house and "asked [her] to show

---

[1] In *Lin-Zheng v. Att'y Gen.*, 557 F.3d 147 (3d Cir. 2009) (en banc), we quoted a U.S. State Department Report indicating that "the minimum age for marriage in China is 22 for males and 20 for females . . . Persons who marry before the stipulated age generally are not allowed to register the marriage or obtain a notarized certificate of marriage." *Id.* at 149 n. 2.

them the marriage certificate and the birth permit." Chen testified that when she could not produce those documents, she was arrested and "sent . . . to a hospital." The birth control cadres also caused damage to Chen's furniture. (AR 163) ("they broke the doors of the refrigerator"). At the hospital Chen was forced to undergo an abortion. She stayed in the hospital until the following day. On that date, Chen's family, including her husband, came to the hospital and became involved in a physical altercation with "the workers in the hospital."

Chen was eventually fined 10,000 RMB for her unauthorized pregnancy,[2] though she refused to pay the fine. Apparently due to her refusal to pay, birth control cadres came to Chen's house and again damaged her furniture. (AR 164) ("after awhile . . . everything almost [sic] in the house [was] broken, so that they had nothing to break"). Chen testified that, according to conversations she recently had with family members still living in China, the government has threatened Chen with sterilization for failure to pay the fine.

At the close of the hearing the IJ denied all requested relief, finding that Chen "was not credible, and she produced no reliable corroboration as would be necessary in light of her incredulity." The IJ criticized Chen for the "scanty detail in her written I-589," and also for the fact that Chen's testimony provided no further explanation as to

---

[2] "RMB" is the symbol for the Chinese currency, renminbi. At the time 10,000 RMB equaled approximately $1,000.

"why the government would want to sterilize her upon return, particularly when she and her husband are now of legal age to marry and request a birth permit for having children, if necessary in their province." The IJ found that Chen's "testimony that the government would sterilize her for failing to pay the fine was unsupported by any law in China." The IJ challenged Chen's credibility by pointing to a letter from Chen's husband that neglected to mention the threats of sterilization Chen discussed in her testimony. The IJ found that there were other inconsistencies between Chen's testimony and her husband's letter, and specifically in relation to the degree of property damage done by birth control cadres to Chen's home during her arrest on December 8, 2004. The IJ also found that Chen was "incredulous when she could not explain why she omitted from her written application about the 10 to 20-minute confrontation between her family and authorities at the hospital." Finally, the IJ found that Chen "wasn't able to explain why DHS's investigation of her documents, which purported to be medical records of her pregnancy, her abortion of an eight-month pregnancy, emergency treatment of her husband, and a notification for a fine, were revealed to be unauthentic."

The BIA dismissed Chen's appeal and denied her motion to remand proceedings based on new evidence. As to the remand motion, the BIA concluded that Chen had failed to demonstrate that the evidence was not available or discoverable prior to the removal hearing. With respect to Chen's appeal, the BIA found "no clear error in the Immigration Judge's adverse credibility finding based on her consideration of the false

4

documents presented by the respondent together with inconsistencies and omissions identified in and between the respondent's testimony, her asylum application, and her husband's letter." The BIA determined that "because [Chen's] discredited story serves as the basis for each form of relief she requests," the IJ did not err in denying each of Chen's applications for relief. Chen appealed.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). *See Abdulai v. Ashcroft*, 239 F.3d 542, 547 (3d Cir. 2001). "[W]hen the BIA adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and BIA." *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). We review an adverse credibility determination for substantial evidence and will uphold that determination "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (quotations omitted). We review for abuse of discretion the BIA's denial of a motion to remand removal proceedings. *See Vakker v. Att'y Gen.*, 519 F.3d 143, 146 (3d Cir. 2008). "Under the abuse of discretion standard of review, we will not disturb the BIA's decision unless it was arbitrary, irrational, or contrary to law." *Jahjaga v. Att'y Gen.*, 512 F.3d 80, 82-83 (3d Cir. 2008) (quotations and citation omitted).

III.

Chen presents two questions for our review: "Whether the IJ's denial of Chen's application for asylum is supported by substantial evidence" (Pet. Br. at 7), and whether the BIA abused its discretion in denying Chen's motion to remand. We answer the first question in the affirmative, the second in the negative, and we will explain our answers in reverse order.

A.

The BIA did not abuse its discretion when it denied Chen's motion to remand based on purported new evidence. As the BIA indicated, a motion to remand proceedings based on new evidence "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. 1003.2(c)(1).[3] In her brief, Chen fails to offer a plausible explanation as to why her own new affidavit, the new affidavit from Chen's mother, and the new "certificate" from the village committee in Chen's hometown[4] were unavailable to Chen at the time of the removal hearing, and we have not

_____

[3] Because there is no express statutory authorization for a motion to remand, the BIA appropriately used the standard for a motion to reopen removal proceedings based on new evidence. *See In re Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992); *see also Korytnyuk v. Ashcroft*, 396 F.3d 272, 282 (3d Cir. 2005).

[4] The certificate, dated December 6, 2007, simply states that Chen "was pregnant in 2004 without marriage, and violated the family-planing policy. On December 8, 2004, abortion was performed on Chen . . . and a family-planning fine of 12,000 Yuan was imposed on her. Chen . . . has not paid the fine yet." (AR 45.) We note that the amount

6

found one in the record. Indeed, it appears that Chen was able to gain possession of those documents within the span of a few months; since Chen was on notice of the Government's fraud investigation concerning her documentary evidence for over nine months before the hearing (and because Chen had been in removal proceedings for more than two years altogether before the hearing), we fail to see why Chen's new documentary evidence could not have been procured during that time.

B.

The adverse credibility determination in this case is supported by substantial evidence. As the IJ found, Chen did not provide complete answers to the questions, and in particular questions 1B and 4 in part B, in her asylum application. In addition, Chen's application neglected to mention any details concerning the altercation between her family and the hospital employees on December 9, 2004. The letter from Chen's husband makes no mention of the threats of sterilization, made by the birth control cadres, concerning Chen should she return to China. There are several discrepancies between the accounts of Chen and her husband concerning the dates, type, and extent of the property damage caused by the birth control cadres. Finally, the investigation by the Government revealed Chen's hospital records to be fraudulent and Chen was, and still is, unable to rebut the investigative report. Faced with these facts, it was reasonable for the IJ to

of the "family-planning fine" discussed in the certificate is different only in number from the amount testified to by Chen; the Chinese currency names "Yuan" and "RMB" can be used interchangeably. *See Zhang v. Gonzales*, 405 F.3d 150, 152 n.4 (3d Cir. 2005).

conclude that Chen's testimony was embellished and incredible.

Accordingly, we will deny the petition for review.